IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No. 1:19-CR-258 |
| v. ) | |
| ) | The Honorable T.S. Ellis, III |
| MARK VISCONI, ) | |
| ) | Sentencing: January 31, 2020 |
| *Defendant*. ) | |
| ) | |

## UNITED STATES' POSITION ON SENTENCING

The United States, through undersigned counsel and in accordance with 18 U.S.C. § 3553(a) and the United States Sentencing Guidelines ("Guidelines" or "U.S.S.G."), hereby submits its position with respect to the sentencing of the Defendant, Mark Visconi. The Defendant's use of sophisticated technology that concealed his online identity and hampered law enforcement's ability to investigate his crime, combined with the content of the material he was viewing as well as the photographs that he created, warrant a significant sentence. The United States recommends that the Court sentence the Defendant to 97 months in prison, which represents the low end of the Guidelines range, followed by 10 years of supervised release.

## BACKGROUND

**I.     Tor Network**

Understanding the seriousness of the Defendant's offense requires understanding the tools he used to commit it, which were sophisticated and differentiate him from other offenders. Traffic over the internet works in some key ways much like the standard mail system. Devices accessing the internet are assigned a unique identifier known as an IP address. Packages of information are sent across the internet to and from the addresses. The outside of the package has

1

a header, this contains non-content routing information, including the IP address of the intended recipient, while the content is stored inside. In typical cases, this information provides law enforcement various means of identifying individuals engaging in criminal activity by determining who is using the IP address.

The Onion Router ("Tor"), sometimes referred to as the "dark web," is a way around this. Tor hides this information and instead routes your package through other devices, known as relay computers, so that the path to the destination is concealed. By the time it reaches the destination, the package no longer shows the original IP address in the header. Tor advertises this capability as follows:

> Tor helps reduce the risks of both simple and sophisticated traffic analysis by distributing your transactions over several places on the internet, so no single point can link you to your destination. The idea is similar to using a twisty, hard-to-follow route in order to throw off somebody who is tailing you—and then periodically erasing your footprints. Instead of taking a direct route from source to destination, data packets on the Tor network take a random pathway through several relays that cover your tracks so no observer at any single point can tell where the data came from or where it's going.

The Tor Project, *Tor: Overview*, 2019.www.torproject.org/about/overview.html.en (last visited Jan. 24, 2020). Many standard websites can be accessed through Tor, but there are some websites that can *only* be accessed through Tor. These are known as "onion services" or "hidden services." These websites cannot be accessed through search engines such as Google, so a user must either know the address of the hidden service or be linked to it from another website or hidden service. *See United States v. Levin*, 874 F.3d 316, 319 (1st Cir. 2017). These dark web hidden sites provide marketplaces for drugs, firearms, and other criminal activity, but it has been estimated that the vast majority of the dark web activity is dedicated to child sex abuse material. *See* Andy Greenberg, *Over 80 Percent of Dark-Web Visits Relate to Pedophilia, Study Finds*,

2

Wired (Dec. 30, 2014), https://www.wired.com/2014/12/80-percent-dark-web-visits-relate-pedophilia-study-finds/. These child sex abuse hidden websites hosted on the anonymous web provide offenders a sense of safety from law enforcement which fuels more brazen and egregious behavior.

## II.     The Defendant's Conduct

The Defendant, on at least one occasion, visited one such hidden service on Tor, browsed to a section titled "Pre-teen Hardcore," sub-forum "Videos," where he found a post showed a minor female masturbating along with a password and link to access the video. The defendant followed that link (which was to a non-Tor website) and used that password. It was only by virtue of that non-Tor link that law enforcement was able to identify the defendant. A search warrant was subsequently executed on the Defendant's home, resulting in the seizure of electronic devices. One device showed evidence that the Defendant downloaded and viewed other child sex abuse videos. Although the content of these videos was not recovered, the titles are indicative of the material the Defendant sought. These titles include "5yo anal sex.wmv" and "14yo forced blowjob.mp4."

In addition to the child sex abuse material, the search of the Defendant's devices also revealed non-pornographic images which nevertheless appear indicative of a sexual interest in children. The Defendant used his iPhone to create over 400 image files focusing on the clothed buttocks of juvenile girls. A small subset of these images appear to be attempted "upskirt" images, with the camera at a low height, angled upward underneath either skirts or loose shorts.

## III.    Procedural History

Upon completion of the government's forensic review and after counsel reviewed the relevant discovery, the Defendant promptly accepted responsibility and pled guilty prior to charging. On October 4, 2019, the Defendant pled guilty to one count of receipt of child

pornography, in violation of 18 U.S.C. §§ 2252(a)(2) & (b). The defendant was detained and remanded to the custody of the U.S. Marshals at that time.

## SENTENCING ANALYSIS

The Court must consult both the Sentencing Guidelines and the sentencing factors in 18 U.S.C. § 3553(a) to determine the appropriate sentence for the Defendant's crime of knowing receipt of child pornography. Although the Sentencing Guidelines are advisory, district courts are required to "consult those Guidelines and take them into account when sentencing." *United States v. Booker*, 543 U.S. 220, 264 (2005). Under the required procedures, a "district court shall first calculate (after making the appropriate findings of fact) the range prescribed by the guidelines. Then, the court shall consider that range as well as other relevant factors set forth in the guidelines and those factors set forth in [18 U.S.C.] § 3553(a) before imposing the sentence." *United States v. Hughes,* 401 F.3d 540, 546 (4th Cir. 2005) (citation omitted).

### I.     Statutory Minimum and Maximum Penalties

Receipt of child pornography carries a minimum term of 5 years imprisonment with a maximum term of 20 years. 18 U.S.C. § 2252(a)(2) and (b)(1). Following any term of imprisonment, the Defendant must be placed on supervised release for a term of at least 5 years up to a lifetime term. 18 U.S.C. § 3583(k). Notably, the Sentencing Guidelines recommend a lifetime term of supervised release for sex offenders, U.S.S.G. § 5D1.2(b) (Policy Statement), and the Fourth Circuit has observed that § 3583(k) and 5D1.2(b) jointly "reflect[] the judgment of Congress and the Sentencing Commission that a lifetime term of supervised release is appropriate for sex offenders in order to protect the public." *United States v. Morace*, 594 F.3d 340, 351 (4th Cir. 2010) (quotation marks and citations omitted).

This offense also carries a $100 special assessment pursuant to 18 U.S.C. § 3013, as well as a $5,000 special assessment pursuant to 18 U.S.C. § 3014 because the Defendant is non-indigent.[1]

**II. Sentencing Guidelines.**

The PSR correctly calculates that the Defendant's total offense level is 30 and his criminal history category is I. PSR ¶¶ 81-82. The government and the defendant have agreed that the following Guidelines provisions apply in this case:

| Guideline | Offense Level |
|---|---|
| Base Offense Level for receipt of child pornography (U.S.S.G. § 2G2.2(a)(2)); | 22 |
| Reduction for conduct limited to receipt of the material (*id.* § 2G2.2(b)(1)); | -2 |
| Enhancement for trafficking in material that involved a prepubescent minor and a minor who had not attained the age of 12 years (*id.* § 2G2.2(b)(2)); | +2 |
| Enhancement for trafficking in material that involved sadistic or masochistic conduct or sexual abuse (*id.* § 2G2.2(b)(3)(F)); | +4 |
| Enhancement for use of a computer or interactive computer service to receive child pornography (*id.* § 2G2.2(b)(6)); | +2 |

*Id.* ¶ 4. The Probation Office properly found that the Defendant should receive a five level enhancement because his offense involved more than 600 images, pursuant to U.S.S.G. § 2G2.2(b)(7)(D).

The PSR also properly found that the Defendant clearly demonstrated acceptance of responsibility for his offense and is entitled to a two-level reduction, pursuant to U.S.S.G. § 3E1.1(a). The Defendant has also assisted authorities in the prosecution of his own misconduct

---

[1] The Defendant indicated that his assets have changed, but has not provided further information, nor has he claimed that he is indigent for the purposes of this statute.

by entering a guilty plea prior to charging, thereby permitting the government to avoid preparing for trial and permitting the effective use of both government and Court resources. Accordingly, the United States hereby moves for an additional one-level reduction, pursuant to U.S.S.G. § 3E1.1(b).

The Defendant objects (1) to the four-level enhancement for material that portrays sadistic or masochistic conduct, (2) to the five-level enhancement for an offense involving more than 600 images, and (3) to the total offense level. Each of these objections should be denied, as the guidelines are properly calculated.

The Defendant downloaded and viewed videos that were inherently sadistic. The Fourth Circuit, joining the weight of authority in other Circuits, held that an image or video that portrays the anal or vaginal penetration of a young child by an adult male or with an object for sexual purposes is sufficient evidence by itself for the enhancement. *See, e.g.*, *United States v. Johnson*, 680 F. App'x 194, 198 (4th Cir. 2017) ("Where pornographic images portray the sexual penetration of prepubescent children, courts consistently find the images 'inherently sadistic' because they depict sexual acts that are 'likely to cause pain in one so young.'") (collecting cases). The Defendant admitted to downloading and viewing child sex abuse material, including a file titled "5yo anal sex.wmv." Anal penetration of a 5 year old is more than sufficient to constitute sadistic material triggering the application of the four-level enhancement.

Similarly, the Court need only look to the Defendant's admitted conduct to resolve the image count question. The Defendant admitted to downloading and viewing over twenty child sex abuse videos. Under the Guidelines, every video is considered to have 75 images. U.S.S.G. § 2G2.2, App. Note 6(B)(ii). By that calculation, the Defendant's offense involves well in excess of 600 images. Here too, the enhancement is properly applied.

Because the base offense level, enhancements, and reductions are all proper, the total offense level is also accurate. In conjunction with his Criminal History Category I, the Defendant's Guidelines range is correctly calculated at 97 to 121 months.

### III. Sentencing Factors Under 18 U.S.C. § 3553(a)

When imposing a sentence, the Court must consider certain factors as laid out under 18 U.S.C. § 3553(a). These factors include the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; and the need to avoid unwarranted sentence disparities among defendant with similar records who have been found guilty of similar conduct. In this case, the nature of the offense, combined with the Defendant's use of the dark web, his position of public trust, and his production of images indicative of a sexual interest in children underscore that a significant sanction is necessary.

*Nature of the Offense*

An all-too-common perception is that non-production child pornography offenses are essentially victimless crimes because the images already exist and the children depicted in them have already been abused. This is false. As the Supreme Court has recognized, "[t]he distribution of photographs and films depicting sexual activity by juveniles is intrinsically related to the sexual abuse of children . . . ." *New York v. Ferber*, 458 U.S. 747, 759 (1982). This is so for at least two reasons. First, increased demand for child pornography is associated with increased supply. In particular, "[t]he demand for child pornography harms children in part because it drives production, which involves child abuse." *Paroline v. United States*, 134 S.Ct. 1710, 1716 (2014); *accord Ferber*, 458 U.S. at 759–60. Innumerable images and videos depicting child rape and sexual abuse are already available on the internet. Nevertheless, as the Court knows, more

such content continues to be produced and made available to child pornography consumers nearly every day. Second, consumption of child pornography—including receipt and possession offenses—re-victimizes the children whose sexual abuse is depicted in the material. *See, e.g., Paroline*, 134 S.Ct. at 1716-17 ("[t]he harms caused by child pornography . . . are still more extensive because child pornography is 'a permanent record' of the depicted child's abuse, and 'the harm to the child is exacerbated by its circulation'") (quoting *Ferber*, 458 U.S. at 759). It is, to say the least, highly traumatic for a child to suffer sexual abuse at the hands of an adult. But many victims of child pornography crimes suffer even more. Not only were they traumatized by the initial sexual abuse that was captured on film, they endure further victimization through the ongoing traffic and consumption of images depicting that abuse. These victims also live every day with the knowledge that this cycle of re-victimization may never end. Once images are distributed over the internet, it is unlikely that they will ever be fully recovered.

This case is no different. It involves real victims who continue to endure harm and loss from the conduct of offenders like the Defendant. One victim, whose letter has been provided to the probation office and the Defendant, explained,

> The fact that I am struggling to write this statement, to tell the court the devastating effects of the ongoing circulation of my sex abuse images is yet one more challenge I face as a result of the crimes against me. My childhood innocence was stolen and continues to be exploited on a daily basis by strangers. Knowing that I cannot retrieve the photos or videos, nor can I remove them from the internet and dark web makes me feel helpless and powerless.

As a result of the circulation of her images, the victim was forced to change her name, not own property in her name, and participate in a program that protects her information, but makes it "hard to do just about anything from get [her] license to opening a bank account." The Court's

sentence should reflect the seriousness of the crime and the continuing harm it inflicts on these children who have already been victimized.

*Use of the Dark Web*

The Defendant's sentence must also serve as a beacon to those who are currently conducting an open market of child sex abuse material because they feel safe in the perceived anonymity of the dark web. The Defendant was hiding his activities by using the Tor anonymous internet capabilities to access a hidden service dedicated to child sex abuse material. Offenders who traffic in child pornography over the dark web are often brazen. When the hidden service site that the Defendant used was active, it operated in full view of law enforcement. Other child pornography websites on the dark web still do. Users of these websites upload and download videos of child sexual abuse and even discuss the sexual exploitation of children openly, all in the belief that the Tor network will shield their identities. These circumstances present law enforcement with what one court accurately described as "the daunting task of apprehending tens of thousands of individuals engaged in perverse crimes but cloaked in anonymity through their use of Tor . . . ." *United States v. Kienast*, 907 F.3d 522, 529 (7th Cir. 2018). There is little sign that child pornography trafficking on the dark web is abating. It is only because of specific circumstances of the investigation that resulted in this case that the Defendant was identified. The Court should craft a sentence sufficient to deter others from joining the thousands of criminals who believe that the anonymity of the dark web will prevent them from being identified and prosecuted, and that conveys that continuing to participate in a market that thrives on the abuse of children will not be tolerated.

*Position of Public Trust*

At the time of his crimes, the Defendant was a Colonel in the United States Air Force. The citizens of this country put a large measure of trust in his hands. That the Defendant's chose to spurn the trust that had been placed in him and instead commit a crime at the expense of society's most vulnerable members sets him apart from other defendants to come before this Court.

*Clothed Images of Children*

Finally, the disturbing images found on the Defendant's phone show that his conduct was not limited to the ostensible detachment of the internet, but had crossed into his actions in the world. The Defendant took hundreds of pictures focused on the buttocks of juvenile girls. To be clear, these images are not pornographic or sexually explicit, indeed many of the images appear to be taken without the girls' knowledge while they are in public places. These images represent, however, a significant step towards bringing the Defendant's online sexual interests to life. This concerning behavior further highlights the need for a significant sentence and supervision in this case.

**IV.     Restitution**

In addition to being agreed upon by the parties, restitution is required in this case because the Defendant's actions caused cognizable damages under federal law. The government has received one restitution request at this time. The government anticipates that a restitution agreement will be reached in this case at the time of sentencing.

**CONCLUSION**

For these reasons, the United States respectfully requests that the Court impose a term of imprisonment at the extreme bottom end of the Guidelines range, which is 97 months. The

United States also requests the Court impose a term of at least 10 years supervised release, along with the required special assessments.

                              Respectfully Submitted,

                              G. ZACHARY TERWILLIGER
                              UNITED STATES ATTORNEY

By:   /s/
           Gwendelynn Bills
           Special Assistant United States Attorney (LT)
           Whitney Russell
           Assistant United States Attorney